IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION

| | | |
|---|---|---|
| GSA NETWORK; STUDENTS ENGAGED IN ADVANCING TEXAS; TEXAS AFT; REBECCA ROE, by and through her next friend RUTH ROE; ADRIAN MOORE, by and through his next friend, JULIE JOHNSON, and POLLY POE, | § § § § § § § § | |
| Plaintiff, | § § | |
| v. | § § | C.A. No. 4:25-cv-04090 |
| MIKE MORATH, in an official capacity as COMMISSIONER OF THE TEXAS EDUCATION AGENCY; HOUSTON INDEPENDENT SCHOOL DISTRICT; KATY INDEPENDENT SCHOOL DISTRICT; and PLANO INDEPENDENT SCHOOL DISTRICT | § § § § § § § § § | |
| Defendants. | § | |

## **DEFENDANT KATY INDEPENDENT SCHOOL DISTRICT'S MOTION TO DISMISS**

Christopher B. Gilbert
Alexa Gould
**THOMPSON & HORTON LLP**
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6744
Facsimile: (713) 583-8884
cgilbert@thompsonhorton.com
agould@thompsonhorton.com

**ATTORNEYS FOR DEFENDANT KATY INDEPENDENT SCHOOL**

## **TABLE OF CONTENTS**

NATURE AND STAGE OF PROCEEDING ..................................................................................1

ISSUE PRESENTED ..................................................................................................................2

STANDARD OF REVIEW ...........................................................................................................3

ARGUMENT AND AUTHORITIES ...............................................................................................4

A.  Plaintiffs have failed to plead facts that show that any deprivation of their First or Fourteenth Amendment rights occurred in accordance with an alleged official policy or firmly entrenched custom legally attributable to the Katy Independent School District, as opposed to a policy of the State of Texas ..................................................................................................................4

CONCLUSION .........................................................................................................................12

CERTIFICATE OF SERVICE  .................................................................................................13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).................................................................................3, 4

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988)....................................................3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................3

*Bigford v. Taylor*, 834 F.2d 1213 (5th Cir. 1988)...............................................................7, 8, 9

*Blackburn v. City of Marshall*, 42 F.3d 925 (5th Cir. 1995)............................................................3

*Board of County Comm'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397 (1997)..........................4

*Brown v. Houston Indep. Sch. Dist.*, 763 F. Supp. 905 (S.D. Tex. 1991), *aff'd*, 957
    F.2d 866 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 198 (1992)..............................................5

*Carbalan v. Vaughn*, 760 F.2d 662 (5th Cir. 1985).........................................................................8

*Carter v. Target Corp.*, 541 Fed. App'x 413 (5th Cir. 2013) .........................................................4

*Collins v. City of Harker Heights, Texas,* 112 S. Ct. 1061 (1992). ..............................................4, 5

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000)..........................................6

*Doe v. Hillsboro Indep. Sch. Dist.,* 113 F.3d 1412 (5th Cir. 1997) ................................................4

*Erickson v. Pardus*, 551 U.S. 89 (2007) ........................................................................................3

*Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir. 1980)..........................................6, 7, 8, 9, 11

*Gonzales v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745 (5th Cir. 1993) ..............................................5

*Hicks v. Parker*, 349 Fed.Appx. 869 (5th Cir. 2009).....................................................................6

*Jett v. Dallas Indep. Sch. Dist.,* 7 F.3d 1241 (5th Cir. 1993).......................................................5, 9

*Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521 (5th Cir. 1994).....................................................3

*Monell v. City of New York*, 436 U.S. 658 (1978) ................................................................ passim

*N.N. v. Madison Metropolitan Sch. Dist.*, 670 F.Supp.2d 927 (W.D. Wis. 2009)......................8, 9

*Norman v. Apache Corp.*, 19 F.3d 1017 (5th Cir. 1994) ...............................................................3

*Owen v. City of Independence*, 445 U.S. 622 (1980) ........................................................................5

*Papasan v. Allain*, 478 U.S. 265 (1986) ............................................................................................3

*Parents Involved in Community Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007) ...................8

*S.W. v. Evers*, 2017 WL 4417721 (W.D. Wis. 2017) ........................................................................9

*Spiller v. City of Texas City*, 130 F.3d 162 (5th Cir. 1997) ...............................................................5

*Worsham v. City of Pasadena*, 881 F.2d 1336 (5th Cir. 1989) .........................................................5

**Statutes**

20 U.S.C. § 4071 ................................................................................................................................2

Tex. Educ. Code § 11.005(c) ..............................................................................................................9

Tex. Educ. Code § 11.401 ............................................................................................................9, 11

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION

| | | |
|---|---|---|
| GSA NETWORK; STUDENTS ENGAGED IN ADVANCING TEXAS; TEXAS AFT; REBECCA ROE, by and through her next friend RUTH ROE; ADRIAN MOORE, by and through his next friend, JULIE JOHNSON, and POLLY POE, <br><br> Plaintiffs, <br><br> v. <br><br> MIKE MORATH, in an official capacity as COMMISSIONER OF THE TEXAS EDUCATION AGENCY; HOUSTON INDEPENDENT SCHOOL DISTRICT; KATY INDEPENDENT SCHOOL DISTRICT; and PLANO INDEPENDENT SCHOOL DISTRICT <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § § § § | C.A. No. 4:25-cv-04090 |

**DEFENDANT KATY INDEPENDENT SCHOOL DISTRICT'S
MOTION TO DISMISS**

Defendant Katy Independent School District (hereinafter "Katy ISD" or "KISD") moves to dismiss the claims asserted against it, as follows:

**NATURE AND STAGE OF PROCEEDING**

This is a lawsuit brought by three organizations and several individual plaintiffs, including Plaintiff Moore (a student in Katy ISD) and his mother Julie Johnson, against the State of Texas and three independent school districts (including Katy ISD), over the constitutionality of four provisions of Senate Bill 12 ("SB 12"):

(1) the ban on student organizations "based on sexual orientation or gender identity";

(2) the prohibition on any reference to "race, color, ethnicity, gender identity, or sexual orientation" in any policy, procedure, training, activity, or program "develop[ed] or

      implement[ed]" by a school employee, contractor, or volunteer "at, for, or on behalf of" a school;

(3) the ban on school employees "assisting" in any student's social transition, including by providing "any information" about this topic; and

(4) the prohibition on all educators and third parties from providing any "instruction, guidance, activities, or programming regarding sexual orientation or gender identity to students enrolled in prekindergarten through 12th grade"

(*See* Dkt. No. 32, pp. 1-2). Plaintiffs claim broadly that these provisions constitute viewpoint discrimination in violation of the First Amendment to the United States Constitution (Count One), are unconstitutionally vague (Count Two) and overbroad (Count Three), violate their rights to associate under the First Amendment (Count Five), and are a prior restraint under the First Amendment (Count Six). They also assert that the prohibition on student organizations violates the Equal Access Act, 20 U.S.C. § 4071(a) (Count Four).

      Whatever the merits of Plaintiffs' claims are as to SB 12, they cannot form the basis for a claim against Katy ISD, because Plaintiffs have failed to plead facts that show that any deprivation of their First or Fourteenth Amendment rights occurred in accordance with an alleged official policy or firmly entrenched custom legally attributable to the Katy Independent School District, as opposed to a policy of the State of Texas. Katy ISD therefore moves to dismiss all claims asserted against the district.

## ISSUE PRESENTED

1. Whether Plaintiffs have failed to plead facts that show that any deprivation of their First or Fourteenth Amendment rights occurred in accordance with an alleged official policy or firmly entrenched custom legally attributable to the Katy Independent School District, as opposed to a policy of the State of Texas.

## STANDARD OF REVIEW

Dismissal of a lawsuit on the pleadings is proper where there is either (i) a lack of a cognizable theory of recovery, or (ii) the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  Phrased differently, a claim may be dismissed if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief."  *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994).  While a court will accept a plaintiff's factual allegations as true, the factual allegations must exist; "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief."  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) the Supreme Court clarified Rule 8's specificity standards for pleadings, holding that all pleadings must "provide the 'grounds' of [the party's] 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  This standard "governs . . . in all civil actions and proceedings in the United States district courts."  *Iqbal*, 556 U.S. at 684.

When deciding whether a pleading satisfies the *Twombly/Iqbal* standard, a court must first determine if the asserted claims go beyond mere labels and conclusions and a formulaic recitation of elements, if any.  "[N]aked assertion[s] devoid of further factual enhancement" will no longer suffice.  *Iqbal*, 556 U.S. at 678 (internal citations and quotations omitted).  To properly plead a claim, then, the plaintiff must give a defendant not only fair notice of the claim being asserted, but "the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal citations

and quotations omitted) (per curiam). "[T]he tenet that a court must accept as true all of the allegations contained in [a pleading] is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Mere assertions of legal conclusions "are not entitled to assumption of truth"—they "must be supported by factual allegations." *Id.* at 678–79. Additionally, if a plaintiff's allegations are contradicted by facts disclosed by a document attached to the complaint (or attached to the motion to dismiss that is central to the plaintiff's claims and referenced by the complaint), then those contradicted allegations cannot be accepted as true under Rule 12(b)(6). *Carter v. Target Corp.*, 541 Fed. App'x 413, 417 (5th Cir. 2013).

### ARGUMENT AND AUTHORITIES

**A.    Plaintiffs have failed to plead facts that show that any deprivation of their First or Fourteenth Amendment rights occurred in accordance with an alleged official policy or firmly entrenched custom legally attributable to the Katy Independent School District, as opposed to a policy of the State of Texas.**

Plaintiffs' claims against Katy ISD fail, because they have failed to plead facts that show that any deprivation of their constitutional or statutory rights associated with SB 12 occurred in accordance with a policy adopted by and legally attributable to Katy ISD. Plaintiffs' claims under the First and Fourteenth Amendments must be asserted pursuant to 42 U.S.C. § 1983. To succeed on such a claim, Plaintiffs must show that Katy ISD itself is liable for the violation. *See generally Collins v. City of Harker Heights, Texas,* 112 S. Ct. 1061, 1066 (1992). A school district cannot be held liable under 42 U.S.C. § 1983 for an injury inflicted by its employees based on a theory of vicarious liability or *respondeat superior* liability. *Board of County Comm'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 402 (1997); *Doe v. Hillsboro Indep. Sch. Dist.,* 113 F.3d 1412, 1416 (5th Cir. 1997) (en banc). The Supreme Court set forth its standard on municipal liability in *Monell v. City of New York*:

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. City of New York*, 436 U.S. 658, 694 (1978). *See also Owen v. City of Independence*, 445 U.S. 622, 633 (1980).

In order to state a constitutional claim against a school district under § 1983, then, a plaintiff must demonstrate that the constitutional violation occurred in accordance with official government policy or firmly entrenched custom. *Brown v. Houston Indep. Sch. Dist.*, 763 F. Supp. 905 (S.D. Tex. 1991), *aff'd*, 957 F.2d 866 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 198 (1992); *Worsham v. City of Pasadena*, 881 F.2d 1336 (5th Cir. 1989). The Fifth Circuit has noted that the plaintiff's description of the government's policy or custom and its relationship to the underlying constitutional violation cannot be conclusory, but must contain specific facts. *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997). A school district may be held liable only if the constitutional injury was caused by an official policy or custom promulgated by government officials who have final policy making authority. *Collins*, 503 U.S. at 120-21. Under Texas law, the final policy-making authority for an independent school district generally rests with the school district's board of trustees. *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993); *Gonzales v. Ysleta Indep. Sch. Dist*., 996 F.2d 745, 752 (5th Cir. 1993).

In their Amended Complaint, Plaintiffs allege that Katy ISD has adopted a policy "formally implementing S.B. 12 and enforcing each of the law's challenged provisions." (Dkt. 32, ¶ 48). Plaintiffs admit, however, that all that "policy" (really a board resolution) does is state that the District will follow SB 12, and then sets out bullet points summarizing the various provisions of SB 12. (*See* Dkt. 32, ¶ 121; *see also* Katy ISD Resolution Regarding Senate Bill 12 and Parent

Rights, attached as Exhibit A).[1] This "policy" cannot be used as the basis for asserting *Monell* liability against Katy ISD, because even though it was "adopted" by the Katy ISD school board, it is a mandated policy legally attributable to State of Texas, and not to Katy ISD.

In *Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir. 1980), the Fifth Circuit considered the constitutionality of a provision of the Education Code that allowed a Texas county judge to compel disclosure of the membership of any organization deemed to be interfering with the operation of a public school. *Id*. at 394. A group of students who had peacefully boycotted their school brought suit, claiming that the provision of the Education Code violated their First Amendment rights to free association. The Fifth Circuit ultimately determined that the statute was unconstitutional, and that the lead plaintiff was entitled to nominal damages of $1. *See id.* at 402. The Court then turned "to the question of who shall be required to pay this award." *Id*. at 403. After finding that any individual defendants were entitled to qualified immunity, *id*. at 403, it turned to the question of entity liability under *Monell*. The Court found that the school board was liable, because it had exercised discretion by voting to ask the county judge to implement the disclosure requirement. *Id*. at 404. The Court then held that the County was not liable, because "[w]e do not believe, however, that Judge Decker's compliance with the school board request, by his issuance of the statutory disclosure demands, similarly represented the official policy of Medina County." *Id*. at 404. After a lengthy discussion of what acts of a county judge would constitute the official policy of a county, the Court ruled that complying with the state statute was

---

[1] Generally, in reviewing a Motion to Dismiss under Rule 12(b)(6), a court is limited to the four corners of the Complaint, plus any documents that the Plaintiffs attach to their Complaint. However, the Fifth Circuit has held that a defendant may attach documents to its Rule 12(b)(6) Motion to Dismiss "if they are referred to in the plaintiff's complaint and are central to her claim," *see Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000), without turning the 12(b)(6) motion into a motion for summary judgment. *See also Hicks v. Parker*, 349 Fed.Appx. 869 (5th Cir. 2009) ("[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim."). Not only does Plaintiffs' Amended Complaint discuss the Katy ISD Resolution at length (*see* Dkt. 32, ¶ 121), it provides a link to it. (*See id.* at n.52). The Katy ISD Resolution is therefore admissible as evidence on a Rule 12(b)(6) motion.

not official policy action by the County:

> The narrow authority delegated to the county judge in section 4.28, however, bears no relation to his traditional role in the administration of county government or to the discretionary powers delegated to him by state statute in aid of that role. Instead, his duty in implementing section 4.28, much like that of a county sheriff in enforcing a state law, may more fairly be characterized as the effectuation of the policy of the State of Texas embodied in that statute, for which the citizens of a particular county should not bear singular responsibility.

*Id*. at 404. The Court then ruled that the County was not susceptible to even nominal damages under section 1983, *id*., and ultimately not liable for attorney's fees for the successful challenge of the constitutionality of the statute. *Id*. at 406 ("Of course, since we have held Medina County not to be susceptible to this section 1983 suit under Monell because Judge Decker's actions did not implement or constitute an official county policy the county will share no responsibility for plaintiffs' fees and costs.")

In *Bigford v. Taylor*, 834 F.2d 1213 (5th Cir. 1988), the Court reviewed a challenge to a statute dealing with seized vehicles, which the plaintiff claimed violated his right to due process by failing to provide for a prompt return of his vehicle, or a sufficient hearing. *Id*. at 1221. The Court noted that the case "raises the question whether implementation of a facially unconstitutional state statute, assuming this statute is so, by the county officers charged with implementing it amounts to a county 'policy' under *Monell* and subsequent cases." *Id*. at 1222. While the Court agreed that a county judge could under some circumstances possess policy making authority under *Monell*, it found *Familias Unidas* applicable, where:

> …the particular statute authorizing the judge to act also so narrowed his discretion that, with respect to the subject matter in question, he was effectuating the policy of the State of Texas, not making policy under a standardless grant of authority. The responsibility of the justice of the peace in determining ownership of a vehicle alleged to have been stolen is similarly circumscribed by state law.

*Id*. at 1222 (citing *Familias Unidas*, 619 F.2d at 404). The Court noted that like in *Familias Unidas*, the magistrate in *Bigford* "is not a county policymaker concerning the matter in question,

but is carrying out the policy of the State of Texas." *Id*. at 1223. The County could therefore not be held liable for compliance with the (arguably) unconstitutional statute. *See also Carbalan v. Vaughn*, 760 F.2d 662, 665 (5th Cir. 1985).

Courts outside the Fifth Circuit have reached similar conclusions when considering the actions of school districts. In *N.N. v. Madison Metropolitan Sch. Dist.*, 670 F.Supp.2d 927 (W.D. Wis. 2009), a student sued after she was denied a transfer to a different school district under a state law that required the school district to "reject any application for transfer into or out if the school district … if the transfer would increase racial imbalance in the school district." *Id.* at 929 (citing Wis. Stat. § 118.51(7)). By the time the case reached the judge, the school district agreed that the statute was unconstitutional under intervening Supreme Court caselaw, *see id*. at 931-32 (discussing *Parents Involved in Community Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007)), but argued that the school district "was doing nothing more than implementing a state law directive; it was not making its own policy choice about the use of race in making transfer decisions." *Id*. at 929. The court found "[t]he overarching questions in any case involving municipal liability under § 1983 are whether the unconstitutional act 'may fairly be said to represent official policy' of that municipality and whether the policy was the 'moving force' behind the violation." *Id*. at 933 (*quoting Monell*, 436 U.S. at 694). After a lengthy discussion of how courts around the county have handled the application of *Monell* in the context of a municipality's enforcement of a state law (including a discussion of *Familias Unidas*, *see* 670 F.Supp.2d at 935), the court concluded that the school district was not responsible for its enforcement of the transfer rules:

> Whether it is framed as an issue of "causation," "policy" or "choice," the question under *Bethesda Lutheran* is whether the municipality enforcing a state law has enough discretion in implementation to make the municipality "responsible" for any constitutional violation that occurred. *See also Pembaur,* 475 U.S. at 478, 106 S.Ct. 1292 ("*Monell* is a case about responsibility.") In this case, the parties agree that, on its face, Wis. Stat. § 118.51(7) does not give school districts a choice to comply.

Page 8

*Id.* at 936-37. *See also id.* at 941 ("In sum, I conclude that a municipality cannot be held liable under § 1983 for efforts to implement a state mandate when the plaintiff cannot point to a separate policy choice made by the municipality. In that situation 'it is the policy contained in that state or federal law, rather than anything devised or adopted by the municipality, that is responsible for the injury.' *Bethesda Lutheran,* 154 F.3d at 718.") *Compare S.W. v. Evers*, 2017 WL 4417721 at *7 (W.D. Wis. 2017) (in considering a challenge to Wisconsin's open enrollment law, which allowed school districts to consider an applicant's special education status in making transfer decisions, the court distinguished *N.N.* on the grounds that the challenged transfer provision in *N.N.* "mandated" rejection of an application, but that the current open enrollment provision only allowed a school to consider an impermissible factor; "…the discretion expressly extended to non-resident school districts in weighing the statutory factors for acceptance or rejection of applications by students with special education needs may open them up to municipal liability.")

While a Texas school board would normally be considered the policymaker for a school district for purposes of Section 1983 liability, *see Jett*, 7 F.3d at 1245, here the Katy ISD Board was not acting in its policymaking authority when it adopted the Resolution that simply stated it intended to comply with state law (*i.e.* SB 12). Instead, like the officials in *Familias Unidas*, *Bigford* and *N.N.*, "the [school board] is not a [school district] policymaker concerning the matter in question, but is carrying out the policy of the State of Texas." *Bigford*, 834 F.2d at 1223. Going a step further, it was not even the choice of Katy ISD to adopt the "policy" they did adopt – they were ordered to do so by SB 12: "The board of trustees of a school district ***shall adopt a policy*** prohibiting an employee of the district from assisting a student enrolled in the district with social transitioning…." TEX. EDUC. CODE § 11.401(b) (emphasis added); *see also* TEX. EDUC. CODE § 11.005(c) ("A school district ***shall adopt a policy*** and procedure for the appropriate discipline, including termination, of a district employee or contractor who intentionally or knowingly engages

Page 9

in or assigns to another person diversity, equity, and inclusion duties.")

In any given situation, there could be a time where a school board adopted its own policy to address a given issue (like LGBTQ+ issues), or where state law requires a "policy" but the school board is alleged to have gone further or added to what is required by state law (like in *S.W. v. Evers*), but that is not what the Plaintiffs are alleging here. Although this lawsuit references what is called an "anti LGBTQ+ school board policy [adopted] in August 2023" (Dkt. 32, ¶ 103), the lawsuit does not challenge or assert any claims based on that policy. In fact, and in contrast to SB 12, Plaintiffs admit that under the 2023 policy they were allowed to do many of the things they claim SB 12 would prohibit them from doing: speak at school board meetings and distribute literature on LGBTQ+ issues, and speak generally to school leaders and teachers to advocate their positions. (*Id.*)

The Amended Complaint adds as a plaintiff a student of Katy ISD (Plaintiff Moore), and discusses the impact that SB 12 is having or predictably will have on Plaintiff Moore. (*See* Dkt. 32, ¶¶ 151-171). However, these allegations prove the District's point, that the acts of which they are being accused are caused and motivated solely by the State's adoption of SB 12. Plaintiff Moore alleges that prior to SB 12, Katy ISD allowed Plaintiff Moore to:

- Use the student's gender-preferred name and pronouns (¶¶ 151-152; 161);
- Participate in the student's school's "Pride/Diversity Club"[2] (¶¶ 154, 157-158);
- Wear gender-preferred clothing, and "sing and dress in accordance with his gender identity" (¶¶ 155-156);
- Discuss issue related to "race, gender identity and social transitioning" with the

---

[2] Although Plaintiff Moore claims that the club was required to change its name as a result of the 2023 policy, the student concedes that "[d]espite this name change, the Diversity Club was able to continue the same activities that took place in Pride club, and Adrian was still able to congregate with his friends and discuss topics relating to gender identity and sexual orientation with his friends throughout his junior year." (Dkt. 32, ¶ 158).

student's teachers at school (¶ 160).

Plaintiff Moore's allegations show that what the student is complaining about now has been caused not by a conscious policy decision of the Katy ISD Board, but rather solely because of the mandates of SB 12. This is not actionable against Katy ISD under *Familias Unidas*.

There is one SB 12-related allegation regarding Plaintiff Moore with which Katy ISD disagrees. The Amended Complaint states "Although S.B. 12's Social Transition Ban does not explicitly prohibit school districts from using transgender students' chosen names—especially with parental permission—the section is so vague that Katy ISD has interpreted it to completely bar all school employees from doing so, even in defiance of parents' wishes and explicit permission." (Dkt. 32, ¶ 163). This is simply incorrect. The language of SB 12 prohibiting changing names for purposes of social transitioning is clearly mandatory:

> (a) In this subchapter, "social transitioning" means a person's transition from the person's biological sex at birth to the opposite biological sex *through the adoption of a different name*, different pronouns, or other expressions of gender that deny or encourage a denial of the person's biological sex at birth.
>
> (b) The board of trustees of a school district *shall adopt a policy prohibiting an employee* of the district from assisting a student enrolled in the district with social transitioning, including by providing any information about social transitioning or providing guidelines intended to assist a person with social transitioning.

TEX. EDUC. CODE § 11.401(a)&(b) (emphasis added). So "social transitioning" is defined to include changing one's name for purposes of "deny[ing] or encourage[ing] a denial of the person's biological sex at birth", and SB 12 mandates that the school district "shall adopt" a policy "prohibiting" its employees from doing anything to assist in "social transitioning" – which would include using a gender-preferred name. There is no ambiguity – and absolutely no discretion – in the language of SB 12. Also, there is nothing in SB 12 that would give parents the ability to grant permission to schools or school districts to use names or pronouns that would otherwise violate

Page 11

SB 12.[3]

Plaintiffs' claims against Katy ISD fail, because they have failed to plead facts that show that any deprivation of their constitutional or statutory rights associated with SB 12 occurred in accordance with a policy adopted by and legally attributable to Katy ISD, as opposed to the State of Texas. As such, Plaintiffs' claims against Katy ISD are legally insufficient to avoid dismissal under Rule 12(b)(6) under the *Twombly-Iqbal* standard, and must be dismissed.

## CONCLUSION

For these reasons, Defendant Katy Independent School District respectfully requests that the claims against it be dismissed under Rule 12(b)(6), that Katy ISD be dismissed from this lawsuit, and that the Court grant Katy ISD all such other and further relief, both at law and in equity, to which it may be entitled.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By: /s/ Christopher B. Gilbert
Christopher B. Gilbert
Texas Bar No. 00787535
cgilbert@thompsonhorton.com
Alexa Gould
Texas Bar No. 24109940
agould@thompsonhorton.com

3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6714
Facsimile: (713) 583-8884

**ATTORNEYS FOR DEFENDANT KATY INDEPENDENT SCHOOL DISTRICT**

---

[3] Unlike Katy ISD's old policy, which Plaintiff Moore admits gave Katy ISD staff permission to honor the wishes of parents. *See* Dkt. 32, ¶ 158 ("…in the event a minor student with the written consent of such student's parents or an adult student specifically, in writing, requests or directs the use of specific pronouns for that particular student, district staff interacting with the student may comply with such request.")

**CERTIFICATE OF SERVICE**

      On October 16, 2025, I electronically filed the foregoing document with the Clerk of the Court of the United States District Court for the Southern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel and/or pro se parties of record electronically using the CM/ECF filing system or by any other manner authorized by Federal Rule of Civil Procedure 5(b)(2).

                                                            By:   /s/ Christopher B. Gilbert
                                                                         Christopher B. Gilbert