## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **GSA NETWORK, STUDENTS ENGAGED IN ADVANDING TEXAS, REBECCA ROE**, by and through her next friend, **RUTH ROE**, and **POLLY POE**, <br> *Plaintiffs*, <br><br> v. <br><br> **MIKE MORATH**, in his official capacity as Commissioner of the Texas Education Agency, **HOUSTON INDEPENDENT SCHOOL DISTRICT, KATY INDEPENDENT SCHOOL DISTRICT, and PLANO INDEPENDENT SCHOOL DISTRICT**, <br> *Defendants.* | § § § § § § § § § § § § § § § § § § § | **Civil Action No. 4:25-cv-04090** |

## DEFENDANT'S CONSOLIDATED MOTION TO DISMISS AND RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

TO THE HONORABLE U.S. DISTRICT COURT JUDGE:

Defendant, Mike Morath, in his official capacity as Commissioner of the Texas Education Agency ("Defendant"), respectfully files this consolidated Motion to Dismiss and Response in Opposition to Plaintiffs' Amended Motion for Preliminary Injunction and, in support thereof, would respectfully show unto the Court as follows:

On June 20, 2025, Governor Abbott signed Texas Senate Bill 12 into law which was generally referred to as the Parental Bill of Rights. Tex. S.B. 12, 89th Leg., R.S. (2025) (S.B. 12). Plaintiffs have brought claims against Defendant alleging violations of the First

Amendment to the United States Constitution including claims of viewpoint discrimination, vagueness, overbreadth, the freedom to associate and unconstitutional prior restraint.[1] Yet, Plaintiffs fail to acknowledge the provisions of S.B. 12 are protected government speech. Accordingly, Plaintiffs' claims fail to implicate any protections afforded by the First Amendment.

Defendant hereby moves for dismissal of Plaintiffs' First Amended Complaint under Fed. R. Civ. P. 12(b)(1) for the following reasons: (1) Plaintiffs' lack standing; (2) Plaintiffs' claims are against Defendant are not ripe for adjudication; and (3) Plaintiffs' claims are barred by sovereign immunity. *See* Dkt. 32. Defendant further moves for dismissal of Plaintiffs' First Amended Complaint under Fed. R. Civ. P. 12(b)(6) as Plaintiffs fail to state a claim for relief. Alternatively, should the Court deny Defendants' Motion to Dismiss, Defendants would show that Plaintiffs are not entitled to a preliminary injunction for many of the same reasons that are more specifically addressed herein.

---

[1] Plaintiffs also allege violations of the federal Equal Access Act; however, none of Plaintiffs' claims based in the Equal Access Act are alleged against Defendant. *See* Dkt. 32, ¶¶285-87.

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................iii

TABLE OF AUTHORITIES ............................................................................................v

INTRODUCTION ...........................................................................................................1

STANDARD OF REVIEW ..............................................................................................3

ARGUMENT AND RESPONSE .....................................................................................4

   I.   Plaintiffs Cannot Establish Subject Matter Jurisdiction as their claims are Non-justiciable and Barred by Sovereign Immunity. ................................................. 4

     A.  Plaintiff Organizations do not have standing....................................................7

       1.  GSA Network.................................................................................................7

       2.  Students Engaged in Advancing Texas ..................................................... 8

       3.  Texas AFT ..................................................................................................... 9

     B.  Student Plaintiffs do not have standing..........................................................10

       1.  Rebecca Roe ...............................................................................................10

       2.  Adrian Moore ............................................................................................. 11

     C.  Teacher Polly Poe does not have standing.......................................................11

     D.  Plaintiffs' claims are not ripe............................................................................12

   II.   Plaintiffs' claims against Defendant are barred by sovereign immunity...........................14

   III.   S.B. 12 Simply Regulates Government Speech ........................................................16

     A.  The Club Restriction...........................................................................................19

     B.  The Discrimination Ban ..................................................................................... 20

     C.  Social Transition Ban ......................................................................................... 22

     D.  Curricular Safeguards ........................................................................................23

   IV.   S.B. 12 is Not Viewpoint Discrimination. ............................................................... 24

   V.   S.B. 12 is Not Vague. ............................................................................................... 26

   VI.   S.B. 12 is Not Overbroad.......................................................................................... 28

   VII.   S.B. 12 Does Not Implicate the Freedom to Associate. ......................................... 29

   VIII.  S.B. 12 is Not a Prior Restraint.............................................................................. 30

   IX.   Plaintiffs' Motion for Preliminary Injunction Should be Denied.....................................31

**PRAYER** ................................................................................................................... **33**

**CERTIFICATE OF SERVICE** ............................................................................... **35**

**CERTIFICATE OF CONFERENCE** ....................................................................... **35**

**CERTIFICATE OF WORD COUNT** ...................................................................... **35**

# TABLE OF AUTHORITIES

**Cases**                                                                         **Page(s)**

*Abdullah v. Paxton,*
   65 F.4th 204 (5th Cir. 2023) ................................................................................5

*Abortion Servs. v. Lakey,*
   667 F.3d 570 (5th Cir. 2012) ..............................................................................32

*Aguillard v. Edwards,*
   765 F.2d 1251 (5th Cir. 1985) ............................................................................23

*Alexander v. United States,*
   509 U.S. 544 (1993) ........................................................................................... 30

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .........................................................................................3, 4

*Baird v. State Bar of Arizona,*
   401 U.S. 1 (1971) ............................................................................................... 29

*Barber v. Bryant,*
   860 F.3d 345 (5th Cir. 2017) ............................................................................5, 6

*Bd. of Ed. of Westside Comm. Schools v. Mergens,*
   496 U.S. 226 (1990) ............................................................................................ 8

*Bethel Sch. Dist. No. 403 v. Fraser,*
   478 U.S. 675 (1986) ...........................................................................................12

*Board of Ed. of Ind. Sch. Dist. No. 92 of Pottawatomie Cty. v. Earls,*
   536 U.S. 822 (2002) ..................................................................................... 20, 24

*Board of Ed. v. Pico,*
   457 U.S. 853 (1982) ........................................................................................... 30

*Book People, Inc. v. Wong,*
   91 F.4th 318 (5th Cir. 2024) ..............................................................................13

*Borden v. School Dist. of Tp. of East Brunswick,*
   523 F.3d 153 (3d Cir. 2008) ........................................................................ 17, 28

*Braidwood Mgmt, Inc. v. Equal Emp. Opp. Comm'n,*
   70 F.4th 914 (5th Cir. 2023) ..............................................................................13

*California v. Texas,*
   593 U.S. 659 (2021) ................................................................................................ 6

*Canal Auth. of Fla., v. Callaway,*
   489 F.2d 567 (5th Cir. 1974) .............................................................................. 31

*Carney v. Adams,*
   592 U.S. 53 (2020) ............................................................................................... 7

*Catholic Leadership Coal. v. Reisman,*
   764 F.3d 409 (5th Cir. 2014) .............................................................................. 31

*Chiras v. Miller,*
   432 F.3d 606 (5th Cir. 2005) ......................................................................... 18, 24

*Chiras v. Miller,*
   3:03-CV-2651-M, 2004 WL 10660388 (N.D. Tex. July 23, 2004) .......................... 18

*Choice Inc. of Texas v. Greenstein,*
   691 F.3d 710 (5th Cir. 2012) .............................................................................. 13

*City of Dallas v. Stanglin,*
   490 U.S. 19 (1989) .............................................................................................. 29

*City of El Cenizo v. Texas,*
   890 F.3d 164 (5th Cir. 2018) .............................................................................. 31

*Clapper v. Amnesty Int'l,*
   568 U.S. 398 (2013) .......................................................................................... 5, 6

*Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.,*
   473 U.S. 788 (1985) ............................................................................................ 11

*Doe v. Tangipahoa Par. Sch. Bd.,*
   494 F.3d 494 (5th Cir. 2007) .............................................................................. 16

*E.T. v. Paxton,*
   19 F.4th 760 (5th Cir. 2021) .............................................................................. 32

*Edelman v. Jordan,*
   415 U.S. 651 (1974) ............................................................................................ 14

*El Paso County v. Trump,*
   982 F.3d 332 (5th Cir. 2020) ............................................................................... 5

*Epperson v. State of Ark.,*
   393 U.S. 97 (1968) ............................................................................................. 24

*Evans-Marshall v. Bd. of Tipp City Ex. Vill. Sch. Dist.,*
   624 F.3d 332 (6th Cir. 2010) ...................................................................17

*Ex parte Young,*
   209 U.S. (1908) ..........................................................................................15

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,*
   528 U.S. 167 (2000) ...................................................................................... 6

*Garcetti v. Ceballos,*
   547 U.S. 410 (2006) .............................................................................. passim

*Gonzales v. Carhart,*
   550 U.S. 124 (2007) .................................................................................... 22

*Grossman v. South Shore Pub. Sch. Dist.,*
   507 F.3d 1097 (7th Cir. 2007) ........................................................... 17, 28

*Hazelwood v. Sch. Dist. of Kuhlmeier,*
   484 U.S. 260 (1988) .............................................................................. passim

*Healey v. James,*
   408 U.S. 169 (1972) ....................................................................................19

*Henerey ex. rel. Henery v. City of St. Charles, Sch. Dist.,*
   200 F.3d 1128 (8th Cir. 1999) ...................................................................31

*Hill v. Colorado,*
   530 U.S. 703 (2000) .................................................................................... 26

*Jones v. Bush,*
   122 F.Supp.2d 713 (N.D. Tex. 2000) .......................................................32

*K.P. v. LeBlanc,*
   729 F.3d 427 (5th Cir. 2013) .....................................................................14

*Kolender v. Lawson,*
   461 U.S. 352 (1983) .................................................................................... 26

*Lee v. York County Sch. Div.,*
   484 F.3d 687 (4th Cir. 2007) ............................................................. 17, 28

*Lewis v. Cont'l Bank Corp.,*
   494 U.S. 472 (1990).......................................................................................4

*Little v. KPMG LLP,*
   575 F.3d 533 (5th Cir. 2009) ...................................................................... 6

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,*
   594 F.3d 383 (5th Cir. 2010) ................................................................ 4

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ........................................................................ 7

*Matal v. Tam,*
   582 U.S. 218 (2017) ....................................................................... 25

*Mayer v. Monroe Cty. Comm. Sch. Corp.,*
   474 F.3d 477 (7th Cir. 2007) ................................................... 8, 9, 12, 17

*McCarthy ex rel. Travis v. Hawkins,*
   381 F.3d 407 (5th Cir. 2004) .............................................................. 14

*Milwaukee Police Ass'n v. Jones,*
   192 F.3d 742 (7th Cir. 1999) .............................................................. 31

*Minn. Voters All. v. Mansky,*
   585 U.S. 1 (2018) ......................................................................... 26

*Miss. Power & Light Co. v. United Gas Pipe Line Co.,*
   760 F.2d 618 (5th Cir. 1985) .............................................................. 32

*Moody v. NetChoice, LLC,*
   603 U.S. 707 (2024) ...................................................................... 32

*National End. for Arts v. Finley,*
   524 U.S. 569 (1998) .................................................................. 10, 14

*Netchoice LLC v. Paxton,*
   49 F.4th 439 (5th Cir. 2022) .............................................................. 28

*New Orleans Pub. Serv., Inc. v. Council of New Orleans,*
   833 F.2d 583 (5th Cir. 1987) .............................................................. 12

*Palmer es. rel. Palmer v. Waxahachie Ind. Sch. Dist.,*
   579 F.3d 502 (5th Cir. 2009) .............................................................. 24

*Paterson v. Weinberger,*
   644 F.2d 521 (5th Cir. 1981) ............................................................... 3

*Pennhurst State Sch. & Hosp. v. Halderman,*
   465 U.S. 89 (1984) ....................................................................... 14

*Pierce v. Hearne Indep. Sch. Dist.,*
   600 F.App'x 194 (5th Cir. 2015) ............................................................ 3

*Plotkin v. IP Axess Inc.,*
    407 F.3d 690 (5th Cir. 2005) ................................................................................ 4

*Ramming v. United States,*
    281 F.3d 158 (5th Cir. 2001) .................................................................................3

*Richardson v. Texas,*
    978 F.3d 220 (5th Cir. 2020) ................................................................... 2, 14, 15

*Roark v. Hardee LP v. City of Austin,*
    522 F.3d  (5th Cir. 2008) ..............................................................................26, 27

*Roberts v. U.S. Jaycees,*
    468 U.S. 609 (1984) ............................................................................................ 29

*Roper v. Simmons,*
    543 U.S. 551 (2005) ............................................................................................ 22

*Serv. Emp. Int'l Union, Local 5 v. City of Hous.,*
    595 F.3d 588 (5th Cir. 2010) .............................................................................. 24

*SisterSong Women of Color Rep. Just. Coll. v. Gov. of Georgia,*
    40 F.4th 1320 (11th Cir. 2022) .......................................................................... 26

*Smith v. Goguen,*
    415 U.S. 566 (1974) ............................................................................................27

*Soc. Ch. of the Univ. of Cal. v. Martinez,*
    561 U.S. 661 (2010) ..................................................................... 19, 20, 24, 25

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ..............................................................................................5

*Stringer v. Whitley,*
    942 F.3d 715 (5th Cir. 2019) ................................................................................5

*Students for Fair Admissions, Inc. v. Pres. And Fellows of Harvard Coll.,*
    600 U.S. 181 (2023) ............................................................................................21

*Sullivan v. Leor Energy, LLC,*
    600 F.3d 542 (5th Cir. 2010) ................................................................................ 4

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) .............................................................................................. 6

*Texas All. for Ret. Americans v. Scott,*
    28 F.4th 669 (5th Cir. 2022) ........................................................................15

*Texas v. United States,*
    497 F.3d 491 (5th Cir. 2007) ........................................................................13

*Thomas v. Union Carbide Agric. Prods. Co.,*
    473 U.S. 568 (1985) ........................................................................12

*Trump v. CASA, Inc.,*
    No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025) ........................................33

*Turtle Island Foods, S.P.C. v. Strain,*
    65 F.4th 211 (5th Cir. 2023) ........................................................................ 6

*United States v. Hansen,*
    599 U.S. 762 (2023) ........................................................................ 29

*United States v. Raines,*
    362 U.S. 17 (1960) ........................................................................ 29

*United States v. Skrmetti,*
    605 U.S. _____, 145 S.Ct. 1816 (2025) ........................................................................22, 23

*Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.,*
    455 U.S. 489 (1982) ........................................................................ 26

*Walker v. Tex. Div., Sons of Conf. Veterans, Inc.,*
    576 U.S. 200 (2015) ........................................................................16

*Wash. State Grange v. Wash. St. Rep. Party,*
    552 U.S. 442 (2008) ........................................................................29, 32

*Waters v. Churchill,*
    511 U.S. 661 (1994) ........................................................................ 9

*Webster v. New Lenox Sch. Dist. No. 122,*
    917 F.2d 1004 (7th Cir. 1990) ........................................................................12

*Widmar v. Vincent,*
    454 U.S. 263 (1981) ........................................................................19

*Will v. Michigan Dep't of State Police,*
    491 U.S. 58 (1989) ........................................................................14

*Wisconsin v. Yoder,*
    406 U.S. 205 (1972) ........................................................................15

*Women's Med. Ctr. of Nw. Hous. v. Bell,*
  248 F.3d 411 (5th Cir. 2001) ...................................................................27

*Wood v. Strickland,*
  420 U.S. 308 (1975) ..............................................................................11

**Statutes**

U.S. Const. art. 3 .......................................................................................4

U.S. Const. art. 3, § 2, cl. 1 .......................................................................4

Tex. Const., art. I, § 8 ...............................................................................10

Tex. Educ. Code § 1.007 ............................................................................1

Tex. Educ. Code § 1.009 ............................................................................1

Tex. Educ. Code § 7.021 ...........................................................................18

Tex. Educ. Code § 7.055(b)(1) ..............................................................13, 15

Tex. Educ. Code § 7.102(c)(1) ..................................................................18

Tex. Educ. Code § 7.102(c)(4) ..................................................................18

Tex. Educ. Code § 28.0043(b) ...................................................................10

Tex. Educ. Code § 39.003 .........................................................................15

Tex. Educ. Code §§ 39A.003, 39.004(b) ....................................................15

Tex. Fam. Code, § 151.001 .........................................................................1

**Rules**

Fed. R. Civ. P. 12(b)(1) ...................................................................... passim

Fed. R. Civ. P. 12(b)(6) ......................................................................... 2, 4

**Other Authorities**

Senate Bill 12, 89th Leg., R.S. (2025) .................................................. passim

Tex. House Journal, 89th Leg., R. S., 2025 ..................................................1

Texas Education Agency, *TEA Monthly Superintendent Call 89th Legislature Updates* (June 26, 2025)..................................................................................................... 6

## INTRODUCTION

With overwhelming legislative support, Governor Abbott signed Senate Bill 12 into law on June 20, 2025, and it became effective September 1, 2025. Tex. S.B. 12, 89th Leg., R. S. (2025); *see also,* House Journal, 89th Leg., R. S., 2025, at 7393. S.B. 12 defines curriculum provisions, reaffirms parental rights and prohibits specific practices at public elementary or secondary schools as well as schools operating under a charter under Chapter 12 of the Texas Education Code. Tex. Educ. Code § 1.007. As recognized in S.B. 12, "[t]he fundamental rights granted to parents by their Creator and upheld by the United States Constitution, the Texas Constitution, and the laws of this state, including the right to direct the moral and religious training of the parent's child, make decisions concerning the child's education, and consent to medical, psychiatric, and psychological treatment of the parent's child under Section 151.001, Tex. Fam. Code, may not be infringed on by any public elementary or secondary school or state governmental entity, including the state or a political subdivision of the state." Tex. Educ. Code § 1.009. Because of such foundational basis, S.B. 12 is generally referred to as the Parents Bill of Rights.

While S.B. 12 contains approximately thirty-seven pages of specific affirmations of parents' rights, Plaintiffs only challenge four distinct provisions of S.B. 12. *See* Dkt. 32, ¶1; Dkt. 33 at pp. 2-3. More specifically, Plaintiffs allege S.B. 12 wrongfully "(1) bans all student organizations 'based on sexual orientation or gender identity'"; (2) prohibits any reference to 'race, color, ethnicity, gender identity, or sexual orientation' in any policy, procedure, training, activity or program 'develop[ed] or implement[ed]' by a school employee, contractor, volunteer 'at, for, or on behalf of' a school; (3) bars employees from 'assisting' any student's social transition, including by providing 'any information' about this topic; and (4) prevents all educators and third parties from providing 'instruction, guidance,

activities, or programming regarding sexual orientation or gender identity to students enrolled in prekindergarten through 12th grade.'" Dkt. 32, ¶1.

Plaintiffs are unable to satisfy the jurisdictional hurdles required to bring their claims against Defendant, and their claims should be dismissed under Fed. R. Civ. P. 12(b)(1). Because Plaintiffs have not alleged a concrete injury, traceable to Defendant, and redressable by an order of this Court, Plaintiffs fail to satisfy the requirements for Article III standing. S.B. 12 requires Defendant, as the Commissioner of the Texas Education Agency (TEA) to ensure the TEA receives and posts school district certifications of compliance with S.B. 12 on its website. And, while the Defendant may adopt rules as necessary to implement varying reporting requirements of S.B. 12, none of Plaintiffs' complaints are related to any district reporting requirements. Even if they were, Plaintiffs admit that such reporting requirements do not begin until 2026. Dkt. 32, ¶42.

Plaintiffs' claims against Defendant are also barred by sovereign immunity. Although *Ex parte Young* provides an exception to sovereign immunity when plaintiffs seek prospective relief against a state actor based on an alleged violation of the federal constitution, Plaintiffs cannot "control an officer in the exercise of his discretion." *Richardson v. Texas,* 978 F.3d 220, 242 (5th Cir. 2020). Lacking any waiver of immunity, Plaintiffs' claims should be dismissed.

Plaintiffs' claims should also be dismissed for failure to state a claim upon which relief can be granted. Plaintiffs fail to state a claim as S.B. 12 clearly and definitively sets forth the conduct that is prohibited and, as such, is neither vague nor overbroad. Nor does S.B. 12 violate the First Amendment rights of any plaintiff because, to the extent it regulates speech at all, SB 12 only regulates government speech.

Finally, the balance of equities and the public interest tip in favor of Defendant as there is always a substantial interest in ensuring laws duly enacted by the State and its

representatives are enforced. As such, Plaintiffs are not likely to succeed on the merits of their claims, and any request for injunctive relief should be denied.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move for dismissal where a court lacks subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  A plaintiff has the burden to establish subject matter jurisdiction.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)  (per curiam).  Sovereign immunity (as recognized by the Eleventh Amendment) deprives a court of jurisdiction and is thus properly raised in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).  *See Pierce v. Hearne Indep. Sch. Dist.*, 600 F.App'x 194, 197 (5th Cir. 2015)  (per curiam).

Under Rule 12(b)(1), a defendant may challenge a court's subject matter jurisdiction through a "facial attack" or a "factual attack."  *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).   Where, as here, a defendant challenges subject matter jurisdiction on the face of a complaint, the district court presumes the plaintiff's factual allegations to be true and determines whether those allegations are legally sufficient to establish jurisdiction.  *See id.*  Even if Plaintiff's factual allegations are assumed to be true (which Defendants do not admit), the Defendants are immune from Plaintiff's claims as a matter of law.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal where a plaintiff fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the Court must accept all factual allegations as true, the Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal

conclusions." *Plotkin v. IP Axess Inc.,* 407 F.3d 690, 696 (5th Cir. 2005); *see also, Iqbal,* 556 U.S at 679.

When reviewing a motion to dismiss for failure to state a claim, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010); *see also, Sullivan v. Leor Energy, LLC,* 600 F.3d 542, 546 (5th Cir. 2010).

## ARGUMENT AND RESPONSE

Plaintiffs' claims should be dismissed without prejudice due to a lack of subject matter jurisdiction. Fifth Circuit precedent proscribes Plaintiffs' claims based on standing, ripeness and sovereign immunity, and Plaintiffs' First Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). Should the Court decline to dismiss Plaintiffs' Complaint on jurisdictional grounds, Plaintiffs' First Amended Complaint should also be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Dismissal of Plaintiffs' Complaint would render Plaintiffs' Motion for Preliminary Injunction, Dkt. 33, as moot; however, should the Court not be inclined to dismiss Plaintiffs' First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(6), the Court should deny Plaintiffs' Motion for Preliminary Injunction because Plaintiffs are unlikely to succeed on the merits, they will not suffer irreparable harm, and the equities and public interest weigh in Defendants' favor.

## I.    Plaintiffs Cannot Establish Subject Matter Jurisdiction as their claims are Non-justiciable and Barred by Sovereign Immunity.

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 477 (1990); *see also*, U.S. Const. art. 3, § 2, cl. 1. To establish standing under Article III, Plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of

the defendant, and (3) that is likely to be redressed by a favorable decision." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016); *accord El Paso County v. Trump,* 982 F.3d 332, 337 (5th Cir. 2020). The alleged "injury in fact" will only suffice it is "concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l,* 568 U.S. 398, 409 (2013). At the preliminary injunction state, plaintiffs must make a "clear showing" that they have standing. *Barber v. Bryant,* 860 F.3d 345, 352 (5th Cir. 2017).

Plaintiffs cannot establish the necessary injury in fact as Plaintiffs cannot establish standing merely by invoking the First Amendment. *Abdullah v. Paxton,* 65 F.4th 204, 210 (5th Cir. 2023) (per curiam). Plaintiffs "must assert [their] own legal rights and interests and cannot rest [their] claim to relief on the legal rights or interests of third parties." *Id.* Nor can Plaintiffs show an injury that is actual or imminent or one that is concrete and particularized. *See Clapper,* 568 U.S. at 409. Plaintiffs must establish standing as of "the time the action commences." *Stringer v. Whitley,* 942 F.3d 715, 724 (5th Cir. 2019). And, for prospective relief, Plaintiffs' injury "must be certainly impending to constitute injury in fact"—"allegations of possible future injury are not sufficient." *Clapper,* 568 U.S. at 409 (quotations omitted). Here, by Plaintiffs' own admission, "[Defendant] announced that certifications of compliance will be due in 2026." Dkt. 32, ¶42. Indeed, "[a]llegations of only a 'possible' future injury . . . will not suffice." *Abdullah,* 65 F.4th at 208.

Plaintiffs' alleged impending future injury relates to Defendant's obligation "to receive and publish on TEA's website certifications of compliance from every school district and charter school in the state." Dkt. 32, ¶35; *see also,* S.B. 12 §28(a)-(c). Notably, §28(c) merely requires Defendant to post each certification provided by "the superintendent of a school district or open-enrollment charter school" "on the "agency's Internet website." *See* S.B. 12 §28(a); S.B. 12 §28(c). Plaintiffs' alleged harms remain unaffected by Defendant's posting of certifications and "depends on several layers of

decisions by third parties . . . and is too speculative to confer Article III standing." *Little v. KPMG LLP,* 575 F.3d 533, 541 (5th Cir. 2009). Plaintiffs' theory is too "speculative, conjectural, [and] hypothetical" to support standing. *Clapper,* 568 U.S. at 409. So too, is Plaintiffs' vague claim regarding a generalized, abstract stigmatic injury which "cannot be manufactured for the purpose of litigation." *Barber,* 860 F.3d at 354. Any alleged injury is not "fairly traceable" to any action taken, or to be taken, by Defendant under the prescriptions of S.B. 12.

Nor are Plaintiffs' alleged injuries redressable. "Redressability requires a plaintiff to show "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,* 528 U.S. 167, 181 (2000). Remedies "operate with respect to specific parties." *California v. Texas,* 593 U.S. 659, 672 (2021). Here, the implementation of S.B. 12 is driven by individual school districts, not the named Defendant. Dkt. 32, ¶43. While the TEA did provide legislative guidance to superintendents, such guidance merely reiterated districts' reporting requirements along with the curriculum changes outlined in S.B. 12.[2]

Even if the Court should apply the unique standing rules in First Amendment challenges, Plaintiffs do not fare any better. *See Turtle Island Foods, S.P.C. v. Strain,* 65 F.4th 211, 215 (5th Cir. 2023). Under *Strain,* Plaintiffs need to show that (1) they intend to engage in a course of conduct arguably affected with a constitutional interest; (2) that the course of action is arguably proscribed by statute; and (3) that there exists a credible threat of prosecution under the statute. *See id.* (citing *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 159 (2014)). Plaintiffs' failure to allege a course of conduct affected with a constitutional interest dooms their standing claims, and the standing analysis is equally applicable to the

---

[2] Texas Education Agency, *TEA Monthly Superintendent Call 89th Legislature Updates* ( June 26, 2025), at 27, https://tea.texas.gov/texas-educators/superintendents/89th-legislature-updates.pdf

question of ripeness. A failure of any one of the foregoing reasons requires dismissal of Plaintiffs' claims for lack of subject matter jurisdiction.

### A. Plaintiff Organizations do not have standing.

The organizational Plaintiffs, GSA Network, Students Engaged in Advancing Texas and Texas AFT, lack standing to bring their claims because their purported injury— being able to disseminate their materials to students *specifically through teachers* -- is not "affected with a constitutional interest" as each remains free to disseminate their materials under S.B. 12. None of the organizational Plaintiffs have a constitutional right to command independent third parties to distribute their materials. Plaintiffs "bear[] the burden of establishing standing as of the time [they bring] th[e] lawsuit and maintaining it thereafter." *Carney v. Adams,* 592 U.S. 53, 59 (2020). As such, at least as of August 28, 2025, the filing date of Plaintiffs' Original Complaint, each Plaintiff must establish standing which is a "constitutional prerequisite for jurisdiction." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992). *See* Dkt. 1.

The Supreme Court has explained the "irreducible constitutional minimum of standing requires "an invasion of a legally protected interest which is concrete and particularized, not 'conjectural or 'hypothetical;' 'fairly trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court; and 'likely,' as opposed to merely 'speculative' that the injury will be 'redressed by a favorable decision.'" *Id.* (collecting cases). Here, Plaintiffs lack the required "legally protected interest" and lack standing.

### 1. GSA Network

Plaintiff GSA Network alleges it "engages in constitutionally protected speech by communicating with students, parents and teachers [] about issues of racial justice and support for LGBTQ+ -- including by mailing and emailing resources and information."

Dkt. 33, p. 25. Similar to the other organizational plaintiffs, GSA Networks remains fully able to communicate with whomever it chooses under S.B. 12; however, S.B. 12 prohibits further dissemination of that information by independent third parties at public and charter schools. "[P]ublic-school teachers must hew to the approach prescribed by principals (and others higher up in the chain of authority)." *Mayer v. Monroe Cty. Comm. Sch. Corp.,* 474 F.3d 477, 479 (7th Cir. 2007). There is no provision in S.B. 12 that directly suppresses GSA Network's speech, *contra* Dkt. 33 at 29, as it can continue to mail and email its resources and information. Considering the "significant measure of authority [given schools] over the type of officially recognized activities in which their students participate," *Bd. of Ed. of Westside Comm. Schools v. Mergens,* 496 U.S. 226, 240 (1990), Plaintiff GSA Networks does not enjoy a constitutional right to demand independent parties disseminate information on school campuses when the appropriate governmental decision makers have determined such information fails to fit within the State-ordered curriculum. Lacking conduct arguably affected with a constitutional interest, GSA Networks lacks standing.

## 2. Students Engaged in Advancing Texas

Students Engaged in Advancing Texas (SEAT) alleges it "collaborates with schools, educators, student organizations, and students across Texas in a variety of ways [] by providing information and resources to [] clubs" that are now restricted at public and charter school campuses. Dkt. 33, p. 29. More specifically, SEAT alleges it "shares know-your-rights resources," "shares information with teachers," "hosts advocacy days," and "an annual summit." Dkt. 33, p. 30. None of which is proscribed by S.B. 12. In fact, irrespective of S.B. 12, SEAT may continue all identified activities. The fact that S.B. 12 contains a limitation on the ability of third parties, i.e. teachers, to then further disseminate such information to students does not affect the speech or activity of SEAT. Notwithstanding SEAT's claim that it "will not be able to actively participate in trainings,

programs and activities that reference race, gender identity, and sexual orientation, or discuss topics of social transition, gender identity, or sexual orientation with school employees," *Id.,* there is simply no prohibition of same within S.B. 12. Presumably, SEAT recognizes as much as it failed to specifically identify any specific provision of S.B. 12 that might arguably affect conduct with a "constitutional interest." SEAT lacks standing, and its claims must be dismissed.

### 3. Texas AFT

Plaintiff Texas American Federation of Teachers (Texas AFT) claims fail right out of the gate. Texas AFT is a "statewide labor union that represents over 66,000 employees throughout Texas, including teachers, librarians, counselors, nurses, teaching assistants, and other public and charter school *employees*" and "advocates for the *employment* rights of its members." Dkt. 32, ¶ 12 (emphasis added). By definition, any speech of Texas AFT that may arguably be proscribed by S.B. 12 is limited to that as an employee within their scope of employment. Yet, "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Garcetti v. Ceballos,* 547 U.S. 410, 411 (2006). "This is so in part because the school system does not 'regulate' speech as much as it *hires* that speech." *Mayer,* 474 F.3d at 479.

Texas AFT members, by virtue of their position as government employees, must accept certain limitations on their freedom. *See Waters v. Churchill,* 511 U.S. 661, 671 (1994) ("[T]he government as employer indeed has far broader powers than does the government as sovereign."). Nothing in S.B. 12 prohibits Texas AFT from "advocat[ing] for the employment rights of its members," Dkt. 32, ¶17; however, as its members "hire out their own speech and must be willing to provide the service for which employers are willing to pay," Texas AFT has not alleged "a course of conduct arguably affected with a

constitutional interest." Texas AFT does not have standing.

### B. Student Plaintiffs do not have standing.

#### 1. Rebecca Roe

Plaintiff Roe is a current high school freshman in Houston ISD. Dkt. 33, p. 36. Plaintiff Roe alleges that she "hopes to have" the same experiences she did while attending middle school "with the support and participation of her school, teachers, and third parties." *Id.* While Plaintiff Roe complains of her school's curriculum choices, "[a] school [retains] the authority to refuse to sponsor student speech that might reasonable be perceived to . . . associate the school with any position other than neutrality on matters of political controversy." *Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 272 (1988). Further, "[t]hese activities may fairly be characterized as part of the school curriculum, whether or not they occur in a traditional classroom setting, so long as they are supervised by faculty members and designed to impart particular knowledge or skills to student participants and audiences." *Id.* at 271. There is no disputing a public school student's lack of ability to influence or demand particulars regarding a school's curriculum. Moreover, Section 24, amending Tex. Educ. Code §28.0043(b) specifically prohibits "limit[ing] a student's ability to engage in speech or expressive conduct protected by the First Amendment to the United States Constitution or by Section 8, Article I, Texas Constitution, that does not result in material disruption to school activities." *See* S.B. 12, §24.

Plaintiff Roe also identifies some festivals previously held by her school and claims "S.B. 12 could arguably prohibit her school from allowing" such festivals and programming to continue. Dkt. 33, p. 37. Notwithstanding the discretion afforded officials regarding curriculum choices, the Supreme Court has indicated a reluctance "to invalidate legislation on basis of its hypothetical application to situations not before the Court." *National End. for Arts v. Finley,* 524 U.S. 569, 584 (1998). Plaintiff Roe's right and ability to learn and

receive information is only curtailed while engaged in curriculum related activities at her school which is a limitation specifically reserved to be within the province of the schools. The Supreme Court has repeatedly stressed that a State's restriction on access to a limited public forum "need not be the most reasonable or the only reasonable limitation." *Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.,* 473 U.S. 788, 808 (1985). Plaintiff Roe may prefer a different policy or curriculum, but the advisability of a school's policy does not control its permissibility. *See Wood v. Strickland,* 420 U.S. 308, 326 (1975).

S.B. 12 does not encroach on any of Plaintiff Roe's constitutional rights, and, therefore, she lacks standing.

### 2. Adrian Moore

Plaintiff Moore is a high school senior in Katy ISD. Dkt. 33, p. 38. Similar to Plaintiff Roe, Plaintiff Moore identified some programming that "he hopes to continue being able to watch and participate in similar events in the future. Yet, for the same reasons Plaintiff Roe's hopes were insufficient to create standing, neither does Plaintiff Moore's hopes.

Plaintiff Moore further complains of his district's decision to require his teachers "to only call him by the name given to him at birth." Dkt. 33, p. 40. However, Plaintiffs fail to provide any support that Plaintiff Moore possesses a constitutional right to be called any name other than that on the birth certificate. Nor does such fact alone create standing against Defendant. Plaintiff Moore has failed to allege any specific action taken by Defendant that might possibly establish standing.

### C. Teacher Polly Poe does not have standing.

"Plaintiff Polly Poe is a high school teacher in Plano ISD and a member of Texas AFT." Dkt. 33, p. 42. Plaintiff Poe's complaints are based on her alleged inability to share information with her students referencing topics of race, sexual orientation, gender identity and social transitioning. Dkt. 33, p. 43. But, for the reasons more fully set forth *infra* at III,

Plaintiff Poe, as a teacher has hired out her speech, and "those authorities charged by state law with curriculum development [may] require the obedience of subordinate employees, including the classroom teacher." *Webster v. New Lenox Sch. Dist. No. 122,* 917 F.2d 1004, 1007 (7th Cir. 1990). Such limitations make sense since "[g]overnment employers, like private employers, need a significant degree of control over their employee's words and actions; without it, there would be little chance for the efficient provision of public services." *Garcetti,* 547 U.S. at 418.

Plaintiff Poe, as a teacher, remains subject to the curriculum directives as determined by the Legislature and any other relevant government authorities charged with making curricula decisions for the State of Texas. S.B. 12 does not prohibit Plaintiff Poe's receipt of any of the type of information for which she complains. Rather, her complaint relates to her inability to share such information with her students. Yet, "'[t]he determination of what manner of speech in the classroom [] is inappropriate properly rests with the school board,' rather than the federal courts." *Hazelwood,* 484 U.S. at 267 (quoting *Bethel Sch. Dist. No. 403 v. Fraser,* 478 U.S. 675, 683 (1986)). "The Constitution does not entitle teachers to present personal views to captive audiences against the instructions of elected officials." *Mayer,* 474 F.3d at 480. Plaintiff Poe's complaints do equate to "a course of conduct arguably affected with a constitutional interest," and she lacks standing.

### D. Plaintiffs' claims are not ripe.

A claim is ripe, *i.e.*, "fit for judicial decision," if it presents a pure legal question requiring no further factual development. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586–87 (5th Cir. 1987). If a claim is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all," the claim is unripe. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985) (citation omitted). When assessing ripeness, courts evaluate "(1) 'fitness of the issues for judicial decision[,]'

and (2) 'the hardship to the parties of withholding consideration.'" *Braidwood Mgmt, Inc. v. Equal Emp. Opp. Comm'n,* 70 F.4th 914, 930 (5th Cir. 2023).

With respect to the first prong, a claim is "fit for judicial decision" or "ripe so long as it is not 'contingent [on] future events that may not occur as anticipated, or indeed may not occur at all.'" *See Book People, Inc. v. Wong,* 91 F.4th 318, 333 (5th Cir. 2024). Here, Plaintiffs' claims are not ripe because any hypothetical injury of Plaintiffs remains strictly contingent on future events. Under varying provisions of S.B. 12, Defendant may adopt rules regarding the reporting requirements of school districts; however, Plaintiffs have not specified any promulgated rule by the Defendant that is alleged to have injured Plaintiffs presumably because none has occurred. While the Defendant is the "educational leader of the state," Tex. Educ. Code §7.055(b)(1), Plaintiffs cannot identify any specific action taken by Defendant for which they complain. Any obligation of the Defendant under S.B. 12, at this time, is necessarily "contingent on future events."

Regarding the second prong, "[t]he Supreme Court has found hardship to inhere in legal harms, such as the harmful creation of legal rights or obligations; practical harms on the interests advanced by the party seeking relief; and the harm of being force[d] . . . to modify [one's] behavior in order to avoid future adverse consequences." *Choice Inc. of Texas v. Greenstein,* 691 F.3d 710, 715 (5th Cir. 2012) (quoting *Texas v. United States,* 497 F.3d 491, 499 (5th Cir. 2007). Here, there are no requirements that the TEA adopt rules and regulations to ensure implementation. Each individual school district may implement S.B. 12 within the guidelines set forth therein, but the obligations placed on TEA are related to public notice and disclosure requirements. Recognizing as much, Plaintiffs rely on Defendant's general authority to require schools' compliance with state law. *See* Dkt. 32, ¶¶39-40. However, the general duties reference by Plaintiffs fail to show the Defendant's particular duty to enforce S.B. 12. As such, Plaintiffs remain unable to articulate if or when

Defendant may, or even could, take any specific action under S.B. 12 to enforce it against Plaintiffs. Since courts "are reluctant . . . to invalidate legislation on the basis of its hypothetical application to situations not before the Court," *National Endowment for Arts v. Finley,* 524 U.S. 569, 584 (1998), Plaintiffs' allegations of possible, future injuries solidify a lack of ripeness of Plaintiff's claims.

## II.    Plaintiffs' claims against Defendant are barred by sovereign immunity.

The Eleventh Amendment deprives a federal court of jurisdiction to hear a suit against the State of Texas, regardless of the relief sought, unless sovereign immunity is expressly waived. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100-02 (1984); *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974). A suit against a state official in his or her official capacity is effectively a suit against the state. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). As a preliminary matter, then, any Section 1983 claim or request for declaratory relief against Defendant in his official capacity is barred by sovereign immunity unless an exception applies. *See McCarthy ex rel. Travis v. Hawkins,* 381 F.3d 407, 412 (5th Cir. 2004). Under the *Ex parte Young* exception, sovereign immunity may be overcome when a suit "seeks prospective, injunctive relief from a state actor, in [his] official capacity, based on an alleged violation of the federal constitution." *K.P. v. LeBlanc,* 729 F.3d 427, 439 (5th Cir. 2013). Plaintiffs cannot show this exception applies.

By seeking injunctive relief ostensibly preventing Defendant from implementing S.B. 12, Dkt. 32, ¶313, Plaintiffs improperly seek to "control an officer in the exercise of his discretion." *Richardson v. Tex. Sec'y of State,* 978 F.3d 220, 242 (5th Cir. 2020). Under *Ex parte Young,* a federal court "cannot control the exercise of the discretion of an officer. It can only direct affirmative action where the officer having some duty to perform not involving discretion, but merely ministerial in nature, refuses or neglects to take such action." 209 U.S. at 158 (1908).

If, as here, "a statute, regulation, or policy leaves it to . . . [an] agency to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary." *Richardson,* 978 F.3d at 242. And, when a statute "leaves [officials] considerable discretion and latitude" in how to implement uniform standards, challengers cannot invoke *Ex parte Young. Id.* As the Supreme Court has recognized, states have the "high responsibility for the education of its citizens," which includes the obligations to set standards for what children learn in school and to protect parents' rights to protect their children from inappropriate material. *Wisconsin v. Yoder,* 406 U.S. 205, 213 (1972). States discharge these obligations by "impos[ing] reasonable regulations for the control and duration of basic education." *Id.* This is "the very apex of the function of a State." *Id.* Because the injunctive relief sought seeks to restrain the discretion of Defendant in carrying out this critical responsibility, Plaintiffs cannot invoke *Ex parte Young.* Absent an express waiver, Plaintiffs' claims against Defendant are barred by sovereign immunity.

Nor have Plaintiffs specified the "connection to the enforcement of the *particular* statutory provision [of S.B. 12] that is the subject of the litigation." *Texas All. for Ret. Americans v. Scott,* 28 F.4th 669, 674 (5th Cir. 2022) (emphasis added). Plaintiffs rely on Defendants authority as the "educational leader of the state," Tex. Educ. Code §7.055(b)(1), his authority to "authorize special investigations," Tex. Educ. Code §39.003, and his authority "to impose sanctions," Tex. Educ. Code §§ 39A.003, 39.004(b); however, none of these statutes creates the relevant connection between the Defendant and S.B. 12. *Scott,* 28 F.4th at 674. These "general duties" referenced by Plaintiffs fail to show the Defendant's particular duty to enforce S.B. 12. *See id.*

*       *       *       *

Based on the foregoing reasons, the Plaintiffs' claims should be dismissed due to a lack of subject matter jurisdiction. Unless and until Plaintiffs can identify "conduct affected with a constitutional interest" that has been suppressed or prohibited by Defendant, any ruling issued by this Court would be a "hypothetically-based ruling on issues of broad importance." *Doe v. Tangipahoa Par. Sch. Bd.,* 494 F.3d 494, 499 (5th Cir. 2007). The Court should dismiss Plaintiffs' claims under Fed. R. Civ. P. 12(b)(1).

### III.    S.B. 12 Simply Regulates Government Speech.

Plaintiffs' First Amendment claims fail out of the gate because S.B. 12 concerns government speech and should be dismissed under Fed. R. Civ. P. 12(b)(6). "When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says." *Walker v. Tex. Div., Sons of Conf. Veterans, Inc.,* 576 U.S. 200, 207 (2015). Moreover, when the State is speaking on its own behalf, the First Amendment strictures that attend the various types of government-established forums do not apply." *Id.* at 215.

Plaintiffs contend "the challenged provisions burden Plaintiffs' constitutionally protected speech," Dkt. 32, p. 82; however, the curricular speech of primary and secondary school teachers is not protected by the First Amendment. As declared by the Supreme Court, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006). The Court further observed that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Id.* at 421-22. *Garcetti* alone dooms Plaintiffs' First Amendment claims as the caption of S.B. 12 specifically indicates it "relat[es] to parental rights in public education school requirements and prohibitions

regarding instruction, diversity, equity, and inclusion duties, and social transitioning, and to student clubs **at public schools**." Tex. S.B. 12, 88th Leg., R. S. (2025) (emphasis added).

The threshold question under *Garcetti* is whether the speech at issue "is made pursuant to the employee's official duties." *Garcetti,* 547 U.S. at 413. If the answer is yes, then the speech is not protected by the First Amendment. *Id.* at 421. Indeed, it is difficult to surmise a situation in which a primary or secondary school teacher's curricular choices are made other than "pursuant to [that educator's official duties." *Id.* Those choices are not entitled to First Amendment protection.

"Education is compulsory, and children must attend public schools unless their parents are willing to incur the cost of private education or the considerable time commitment of home schooling." *Mayer,* 474 F.3d at 479. Because of such compulsion, the Seventh Circuit determined "[i]t is enough to hold that the first amendment does not entitle primary and secondary teachers, when conducting the education of captive audiences, to cover topics, or advocate viewpoints, that depart from the curriculum adopted by the school system." *Id.* at 480. There is no disputing that public schools may limit the classroom speech of primary and secondary school teachers to curricular speech in order to promote educational goals. *See Borden v. School Dist. of Tp. of East Brunswick,* 523 F.3d 153 (3d Cir. 2008); *Lee v. York County Sch. Div.,* 484 F.3d 687 (4th Cir. 2007); *Grossman v. South Shore Pub. Sch. Dist.,* 507 F.3d 1097 (7th Cir. 2007). As the Sixth Circuit noted, "[t]he common thread through all of these cases is that, when it comes to in-class curricular speech at the primary and secondary level, no other court of appeals has held that such speech is protected by the First Amendment." *Evans-Marshall v. Bd. of Tipp City Ex. Vill. Sch. Dist.,* 624 F.3d 332, 343 (6th Cir. 2010).

Courts and the law have repeatedly acknowledged the wide authority regarding educational policy bestowed upon various Texas state entities, including the authority to

"develop and update a long range plan for public education," Tex. Educ. Code §7.102(c)(1), and "establish curriculum and graduation requirements," Tex. Educ. Code §7.102(c)(4). *See Chiras v. Miller,* 432 F.3d 606, 608 (5th Cir. 2005); *Hazelwood,* 484 U.S. 260, 273 (1988). Those entities necessarily include the Texas Education Agency. *See* Tex. Educ. Code §7.021.

The Supreme Court has long held that, "the education of the Nation's youth is primarily the responsibility of parents, teachers, and **state and local officials**, and not of federal judges." *Hazelwood,* 484 U.S at 273 (emphasis added). Further, "the government, including its educational institutions, has the discretion to promote policies and values of its own choosing free from forum analysis or the viewpoint-neutrality requirement." *Chiras,* 432 F.3d at 613. And, this remains the true even when the government employs private "speakers" to transmit its message. *Id.*

In *Chiras,* a textbook author and high school student filed suit, alleging the State Board of Education violated their First Amendment rights by refusing to approve Chiras' environmental science textbook. *See generally, Chiras v. Miller,* No. 3:03-CV-2651-M, 2004 WL 10660388, at *1 (N.D. Tex. July 23, 2004). The District Court found that Defendants acted within their discretion and granted their motion to dismiss, in accordance with Fed. R. Civ. P. 12(b)(6). The Fifth Circuit then affirmed the dismissal finding that when the relevant state entities—vested with the authority to do so—devise state curriculum, "it is the state speaking, and not the textbook author." *Chiras,* 432 F.3d at 614. So too here. In devising and implementing educational policy, it is the government's speech that is implicated, not that of the Plaintiffs.

"Underlying our cases has been the premise that while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Garcetti,* 547 U.S. at 420. Senate Bill 12's requirements and

prohibitions are related to curriculum speech and conduct at public schools. As such, S.B. 12 covers government speech and fails to "support the existence of a constitutional cause of action." *Id.* at 426.

### A. The Club Restriction

Section 27 of S.B. 12 specifies "[a] school district or open-enrollment charter school may not authorize or sponsor a student club based on sexual orientation or gender identity." S.B. 12, § 27(b). Despite Plaintiffs' claim that Section 27 "singles out one subset of student organizations for disfavored treatment," Dkt. 32, ¶23, neither the language of Section 27 nor the legislative history supports Plaintiffs' conclusory allegation. Indeed, as referenced by Plaintiffs in their Amended Complaint, Rep. Leach, the House bill sponsor of S.B. 12, explained, "We shouldn't be sexualizing our kids in public schools . . . and we shouldn't have clubs based on sex." Dkt. 32, ¶65; *see also,* Tex. H. of Representatives, Floor Debate on S.B. 12, 89th Leg., R.S. (Tex. May 31, 2025) (video at 2:24:32-2:28:50), https://house.texas.gov/videos/22353.

As noted by the Supreme Court, a school's mission is education, and its decisions have never denied a school's authority to impose reasonable regulations compatible with that mission upon the use of its campus and facilities. *See Widmar v. Vincent,* 454 U.S. 263, 268 (1981). "Cognizant that judges lack the on-the-ground expertise and experience of school administrators, however, we have cautioned courts in various contexts to resist 'substitut[ing] their own notions of sound educational policy for those of the school authorities which they review.'" *Christian Leg. Soc. Ch. of the Univ. of Cal. v. Martinez,* 561 U.S. 661, 686 (2010) (citing *Hazelwood,* 484 U.S. at 273 (noting our "oft-expressed view that the education of the Nation's youth is primarily the responsibility of parents, teachers, and state and local officials, and not of federal judges")) and *Healey v. James,* 408 U.S. 169, 180 (1972) ("[T]his Court has long recognized 'the need for affirming the comprehensive

authority of the States  and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools.'"")).

A school's ability to choose among pedagogical approaches is not simply confined to the classroom as extracurricular programs are considered "essential parts of the educational process. *Martinez,* 561 U.S. at 686 (quoting *Board of Ed. of Ind. Sch. Dist. No. 92 of Pottawatomie Cty. v. Earls,* 536 U.S. 822, 831 (2002) ("Schools, we have emphasized, enjoy a 'significant measure of authority over the type of officially recognized activities in which their students participate.'"")). Accordingly, Defendant's decisions about the character of its student-group program are due decent respect. *Id.* at 687.

Plaintiff, GSA Networks, further alleges that it's "own freedom of speech will [] be curtailed by S.B. 12 because it will be prohibited from sharing resources and information with audiences in Texas." Dkt. 32, ¶81. Notwithstanding Plaintiff's hyperbolic conclusion, S.B. 12 does not contain any limitation on GSA Networks' ability to disseminate its resources and information. While it may no longer be able to specifically share such information on school campuses, as noted by Justice Ginsburg, "the advent of electronic media and social-networking sites reduces the importance of those channels." *Martinez,* 561 U.S. at 691. Indeed, "GSA Networks often emails teachers and students through their school-affiliated email addresses." Dkt. 32, ¶76. S.B. 12 contains no prohibition of such activity. Plaintiffs simply cannot constantly "maintain that nonrecognition of a student organization is equivalent to prohibiting its members from speaking." *Id.*

### B.  The Discrimination Ban

Section 3 of S.B. 12 defines "diversity, equity and inclusion duties" as "(1) influencing hiring or employment practices with respect to race, sex, color or ethnicity except as necessary to comply with state or federal antidiscrimination laws; (2) promoting differential treatment of or providing special benefits to individuals on the basis of race, color, or

ethnicity; [and] developing or implementing policies, procedures, trainings, activities or programs that reference race, color, ethnicity, gender identity, or sexual orientation." S.B. 12, § 3(a). The only prohibitions contained in Section 11.005(b) state, "[e]xcept as required by state or federal law, a school district: (1) may not assign diversity, equity and inclusion duties to any person; and (2) shall prohibit a district employee, contractor, or volunteer from engaging in diversity, equity, and inclusion duties **at, for, or on behalf** of the district except as required by state or federal law." *Id.,* §3(b). While Plaintiff chooses to refer to Section 3 as the "Inclusivity Ban," a more appropriate description for Section 3 would be the "Discrimination Ban" since discrimination is specifically proscribed. Promoting differential treatment based on race, color or ethnicity is textbook discrimination, and the Defendant, under any standard of review, has a compelling interest in eliminating it from the State's public schools. In fact, according to the Supreme Court, "[t]he conclusion made by [*Brown v. Board of Education*] was thus unmistakably clear: the right to a public education 'must be made available to all on equal terms." *Students for Fair Admissions, Inc. v. Pres. And Fellows of Harvard Coll.,* 600 U.S. 181, 204 (2023).

The prohibitions set forth in the Discrimination Ban apply only to activities "at, for, or on behalf of the district." Per the specific language of Section 3, the prohibition does not apply (nor provides any indication otherwise) outside of school-related activities. As such, the Discrimination Ban is not only common sense, but it can only be considered under the government speech doctrine which fails to implicate First Amendment protection. The elimination of discrimination in schools is particularly constitutional and fits comfortably within the bounds of the laws of this Nation.

### C.  Social Transition Ban

Section 7 of S.B. 12 requires the board of trustees of a school district to adopt policies "prohibiting an employee of the district from assisting a student enrolled in the district with social transitioning, including by providing any information about social transitioning or providing guidelines intended to assist a person with social transitioning." S.B. 12 §7. "Social transitioning" is defined as a "person's transition from the person's biological sex at birth to the opposite biological sex . . . or other expressions of gender that deny or encourage a denial of the person's biological sex at birth." S.B 12 §7(a).

The Supreme Court recently analyzed a closely related issue. *See generally, United States v. Skrmetti,* 605 U.S. _____, 145 S.Ct. 1816 (2025). In *Skrmetti,* the Court was reviewing a Tennessee law restricting sex transition treatments for minors. *Id.* at 1826. Although the Tennessee law was related to medical treatments, those medical treatments involved a "person's transition from the person's biological sex at birth to the opposite sex." S.B. 12 §7(a). While noting the wide range of public and expert opinions on the subject, the Court noted, "[w]e afford States 'wide discretion to pass legislation in areas where there is medical and scientific uncertainty.'" *Skrmetti,* 145 S.Ct. at 1836 (quoting *Gonzales v. Carhart,* 550 U.S. 124, 163 (2007)). After applying a rational basis test, the Court upheld the Tennessee law restricting the transition treatments. *Id.* at 1837.

Affirming the application of the rational basis standard, Justice Thomas indicated "[t]here is no dispute [] that the 'decision-making capacity' of adolescents 'is developing, but not yet complete.'" *Id.* at 1846 (Thomas, J., concurring). And, "[t]his Court has recognized as much in other contexts, explaining that children's 'lack of maturity' and 'underdeveloped sense of responsibility' often lead to 'impetuous and ill-considered actions and decisions.'" *Id.* (quoting *Roper v. Simmons,* 543 U.S. 551, 569 (2005)). Thus, States unquestionably have an interest in ensuring any information students may receive

regarding social transitioning comes from appropriate medical providers, is not part of a public schools' instruction, and easily withstands rational basis scrutiny.

Noting the "fierce scientific and policy debates" surrounding "social transitioning," Justice Roberts concluded, "we leaving questions regarding its policy to the people, their elected representatives, and the democratic process." *Id*. at 1837. The same analysis should apply here. Public schools are simply not the appropriate fora to provide instruction to students to enable a "transition from the person's biological sex at birth to the opposite biological sex." S.B. 12 §7(a). Such inquiries should remain within the province of a student, his or her parents or guardians and their respective medical providers.

### D. Curricular Safeguards

Section 24 of S.B. 12 provides, "[a] school district, open-enrollment charter school, or district or charter school employee may not provide or allow a third party to provide instruction, guidance, activities, or programming regarding sexual orientation or gender identity to students enrolled in prekindergarten through 12th grade." S.B. 12, §24(a). Decisions made by the Legislature regarding "instruction, guidance, activities, [and] programming" for public and charter school students is quintessential government speech as it is specifically defines curriculum boundaries. Indeed, the Fifth Circuit has affirmed "[s]tates have the right to prescribe the academic curricula of their public school systems." *Aguillard v. Edwards,* 765 F.2d 1251, 1254 (5th Cir. 1985).

Section 24 also includes exceptions to the proscriptions against the inclusion of instruction regarding sexual orientation or gender identity to specifically allow students to engage in whatever speech they choose as well as school medical providers. More specifically, Section 24 may not be construed to "limit a student's ability to engage in speech or expressive conduct protected by the First Amendment . . . that does not result in material disruption to school activities" nor "limit the ability of a person who is authorized

by the district to provide physical or mental-health related services to provide the services to a student, subject to any required parental consent." S.B. 12 §§24(b)(1)-(2). The exception language of "school activities" and the need for any required "parental consent" further affirms that Section 24 is strictly related to in-school curriculum matters.

The curricular safeguards do not run afoul of any constitutional limitations, especially since the rights of students to speak and receive health-related information from the properly authorized personnel is specifically protected. As such, the Court must exercise "great care and restraint when called upon to intervene in the operation of public schools." *Epperson v. State of Ark.,* 393 U.S. 97, 104 (1968).

## IV.    S.B. 12 is Not Viewpoint Discrimination.

When analyzing viewpoint discrimination, a court must decide whether the government is regulating speech because it disapproves of the ideas expressed. *Serv. Emp. Int'l Union, Local 5 v. City of Hous.,* 595 F.3d 588, 596 (5th Cir. 2010). As previously discussed, "the government, including its educational institutions, has the discretion to promote policies and values of its own choosing free from forum analysis or the viewpoint-neutrality requirement." *Chiras,* 432 F.3d at 613. And, this remains the true even when the government employs private "speakers" to transmit its message. *Id.* Such precedent alone ends the analysis of Plaintiffs' viewpoint discrimination claims. Moreover, as cited by Plaintiffs, Dkt. 33, p. 54, school regulation of student speech can be justified "[i]f the speech is disruptive, lewd, or *school sponsored*." *Palmer es. rel. Palmer v. Waxahachie Ind. Sch. Dist.,* 579 F.3d 502, 509 (5th Cir. 2009).

As explained at III.A, *supra,* a school's ability to choose among pedagogical approaches is not simply confined to the classroom as extracurricular programs are considered "essential parts of the educational process. *Martinez,* 561 U.S. at 686 (quoting *Board of Ed. of Ind. Sch. Dist. No. 92 of Pottawatomie Cty. v. Earls,* 536 U.S. 822, 831 (2002)

("Schools, we have emphasized, enjoy a 'significant measure of authority over the type of officially recognized activities in which their students participate.'")). Accordingly, Defendant's decisions about the character of its student-group program are due decent respect. *Id.* at 687.

Even if the Court were to determine that Plaintiffs enjoy some First Amendment protection, when a governmental entity (school districts and public charter schools) "create[] a limited public forum for private speech . . . some content- and speaker- based restrictions may be allowed." *Matal v. Tam,* 582 U.S. 218, 244 (2017). Such restrictions are further allowed when, as here, the speech at issue is government speech instead of private speech.

When a student group asks to use school resources—including campus facilities—for its own purposes, the limited-public forum analysis would apply. In *Martinez,* the Supreme Court decided that an analogous, albeit a university environment, "case fit[] comfortably within the limited-public forum category" because the plaintiff student group was not asking to be freed from a state prohibition. 561 U.S. at 682. Here, Plaintiffs are requesting just that—to be freed from state requirements regarding the curricula of public and charter schools. The Plaintiff student groups are free to forego the benefit of school spaces for gatherings and maintain exclusive membership based on sexual orientation or gender identity. The Supreme Court explained that "our decisions have distinguished between policies that require action and those that withhold benefits." *Id.* at 682-83. Just as the student group in *Martinez* could continue to meet, albeit without the benefit of school funding and uninhibited use of campus facilities, the Plaintiff student groups to continue to meet outside of school sponsored venues should they wish to implement policies contradictory to State directed curriculum standards.

## V.     S.B. 12 is Not Vague.

Plaintiffs claim S.B. 12 is unconstitutional for the independent reason that it is void for vagueness. Dkt. 32,¶233. A more stringent vagueness test applies when a law "interferes with the right of free speech." *Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.,* 455 U.S. 489, 499 (1982). However, as discussed at III, *supra,* any alleged speech at issue fails to implicate the First Amendment. Such laws may be constitutionally infirm where they "encourage arbitrary and discriminatory enforcement," *Kolender v. Lawson,* 461 U.S. 352, 357 (1983), or "have the capacity 'to chill constitutionally protected conduct, especially conduct protected by the First Amendment." *Roark v. Hardee LP v. City of Austin,* 522 F.3d 546 (5th Cir. 2008). S.B. 12 is neither.

A law is unconstitutionally vague when it (1) fails to provide a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly" or (2) fails to provide "explicit standards" for applying the law "to avoid arbitrary and discriminatory applications." *Roark,* 522 F.3d at 551. However, under most circumstances, "'[p]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.'" *Minn. Voters All. v. Mansky,* 585 U.S. 1 (2018). Perfection, however, is exactly what Plaintiffs demand. "[S]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications." *Hill v. Colorado,* 530 U.S. 703, 733 (2000) (citation omitted); *see also, SisterSong Women of Color Rep. Just. Coll. v. Gov. of Georgia,* 40 F.4th 1320, 1328 (11th Cir. 2022) ("To be sure, there might be vague applications of that definition in other provisions of the Georgia code, but challenges to those applications—like the arguments . . . about potential applications to constitutionally protected conduct—are properly brought in an as-applied manner.").

Regarding the Club Restriction, Plaintiffs argue both "sexual orientation" and "gender identity" are vague. Dkt. 32, ¶¶242-43. Yet, both terms are specifically defined

Merriam-Webster Online.[3] And, as Rep. Leach explained, "[W]e shouldn't have clubs based on sex." Dkt. 32, ¶65. Regarding the Discrimination Ban, Plaintiffs argue "at, for, or on behalf of the district" is vague along with the term "duties." Dkt. 32, ¶¶244-45. Notwithstanding Plaintiffs parade of hypotheticals, duties "at, for, or on behalf of the district" clearly and definitively indicate the S.B. 12 prohibits discrimination by those performing duties on behalf of schools. Regarding the Social Transition Ban, Plaintiffs claim confusion as "assisting" or "assist" are not defined. While it strains credulity that public school employees do not understand the word "assist," it is also specifically defined in the Merriam-Webster Online.[4] Such assistance is exactly what is proscribed under S.B. 12. And, regarding the Curricular Safeguards, Plaintiffs allege "instruction, guidance, activities or programming" is undefined and vague. Dkt. 32, ¶263. As such activities encompass the very essence of school employee duties and prohibition applies to providing such information to students, the curricular safeguards are clearly intended for curriculum-based communications at schools.

"The Fourteenth Amendment's guarantee of Due Process proscribes laws so vague that persons 'of common intelligence must necessarily guess at [their] meaning and differ as to their application.'" *Women's Med. Ctr. of Nw. Hous. v. Bell,* 248 F.3d 411, 421 (5th Cir. 2001) (alterations in original) (quoting *Smith v. Goguen,* 415 U.S. 566, 572 n.8 (1974)). "'[O]nly a reasonable degree of certainty is required" for a statute to survive a vagueness challenge. *Roark,* 522 F.3d at 552-53.

---

[3] "Sexual orientation" is defined as "a person's identity or self-identification as bisexual, straight, gay, pansexual, etc." *Sexual orientation,* Merriam-Webster Online, https:www.merriam-webster.com/dictionary/sexual%20orientation (last viewed October 13, 2025). "Gender identity" is defined as "a person's internal sense of being male, female, some combination of male and female, or neither male nor female." *Gender identity,* Merriam-Webster Online, https:www.merriam-webster.com/dictionary/gender%20identity (last viewed October 13, 2025).
[4] "Assist" is defined as "to give support or aid." *Assist,* Merriam-Webster Online, https:www.merriam-webster.com/dictionary/assist (last viewed October 13, 2025).

S.B. 12 neither encourages arbitrary and discriminatory enforcement nor chills constitutionally protected conduct. As Plaintiffs have filed a facial attack to S.B. 12 and the complained of language is surely valid 'in the vast majority of its intended applications," Plaintiffs' vagueness challenge fails. *Hill,* 530 at 733.

## VI.    S.B. 12 is Not Overbroad

The overbreadth doctrine eases a challenger's burden in the First Amendment context by permitting a plaintiff to succeed "if a substantial number of [the law's] applications are unconstitutional judged in relation to the statute's plainly legitimate speech." *Netchoice, LLC v. Paxton,* 49 F.4th 439, 450 (5th Cir. 2022) (quotation omitted). But the overbreadth doctrine is "a last resort," not a saving grace, and it "attenuates as the regulated expression moves from pure speech toward conduct. *Id.*

Moreover, nothing on the face of S.B. 12 purports to burden Plaintiffs' constitutionally protected speech as Plaintiffs do not have a right to the speech which they claim. Any further "whataboutisms . . . exemplify why it's inappropriate to hold the law facially unconstitutional in a pre-enforcement posture." *Id.* at 451-52. As set forth in Section III, *supra,* S.B. 12 is strictly related to the speech and conduct of employees, volunteers and third parties at or on behalf of public schools. And, "the first amendment does not entitle primary and secondary teachers, when conducting the education of captive audiences, to cover topics, or advocate viewpoints, that depart from the curriculum adopted by the school system." *Id.* at 480. There is no disputing that public schools may limit the classroom speech of primary and secondary school teachers to curricular speech in order to promote educational goals. *See Borden v. School Dist. of Tp. of East Brunswick,* 523 F.3d 153 (3d Cir. 2008); *Lee v. York County Sch. Div.,* 484 F.3d 687 (4th Cir. 2007); *Grossman v. South Shore Pub. Sch. Dist.,* 507 F.3d 1097 (7th Cir. 2007).

Since S.B. 12 is not facially unconstitutional, any challenge to S.B. 12 must be to the statute as it is applied. *See United States v. Hansen,* 599 U.S. 762, 784 (2023). "Exercising judicial restraint in a facial challenge 'frees the Court not only from unnecessary pronouncement on constitutional issues, but also from the premature interpretations of statutes in areas where their constitutional application might be cloudy." *Wash. State Grange v. Wash. St. Rep. Party,* 552 U.S. 442, 450 (2008) (citing *United States v. Raines,* 362 U.S. 17, 22 (1960)).

## VII.    S.B. 12 Does Not Implicate the Freedom to Associate.

"While the freedom of association is not explicitly set out in the [First] Amendment, it has long been held to be implicit in the freedoms of speech, assembly and petition." *Baird v. State Bar of Arizona,* 401 U.S. 1, 6 (1971). As clearly shown herein, S.B. 12 does not aim at the suppression of speech, does not license enforcement authorities to administer the statute based on constitutionally impermissible criteria, nor has S.B. 12 been applied for the purpose of hampering Plaintiffs' ability to express their views. *See Roberts v. U.S. Jaycees,* 468 U.S. 609, 623-24 (1984).

"The right to associate for expressive purposes is not, however, absolute." *Id.* "Infringements on that right may be justified by compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms. *Id.* at 623 (internal cite omitted). As shown herein, S.B. 12 is unrelated to the suppression of ideas. "It is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment." *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989).

Plaintiffs allege "[b]ecause S.B. 12 entirely prohibits Plaintiffs' ability to create, participate in, and engage with GSAs, it violates their right to freedom of association." Dkt. 32, ¶298. Yet, Plaintiffs' allegation is directly rebutted by the language of S.B. 12 and their own admissions. "GSA Network is a membership-based organization with three different types of members: the GSA clubs registered with GSA Network; the student leaders organizing GSA clubs that are registered; and the state-level organizational partners in the National Association of GSA Networks." Dkt. 32, ¶72. Any and all such clubs remain free to continue their activities at any location other than public and charter school campuses based on the pedagogical directives issued by the State within its discretion and authority over public school curricula. Because schools treat all clubs based strictly on sex the same, *supra* at III.A., S.B. 12 does not discriminate based on viewpoint or violate Plaintiffs' freedom of association.

**VIII.   S.B. 12 is Not a Prior Restraint.**

Plaintiffs' complaint that "S.B. 12 imposes an impermissible prior restraint on speech" because the provisions of S.B. 12 "shut down entire forums of speech and censor discussions on favored topics before they occur" is also wrong. *See* Dkt. 33, p. 102; Dkt. 32, ¶309. "The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States,* 509 U.S. 544, 550 (1993) (internal quotations omitted). S.B. 12 is clearly not such a policy.

S.B. 12 does not prohibit constitutionally protected speech of any kind. *See supra* at III. Plaintiffs' complaints rely on an amorphous right of students to receive information, which debatably flows from the First Amendment as an "inherent corollary of the rights of free speech." *Board of Ed. v. Pico,* 457 U.S. 853, 867 (1982). Defendant has not forbidden anyone from speaking. None of the authorities cited by Plaintiffs support a student's independent

right to receive particular information from teachers that would violate the First Amendment.

Even assuming *arguendo* that S.B. 12 was a prior restraint (which it is not), Plaintiffs have not demonstrated why it would be unconstitutional as prior restraints on speech are not always unconstitutional in a public school setting. *See Hazelwood,* 484 U.S. at 268-69; *Henerey ex. rel. Henery v. City of St. Charles, Sch. Dist.,* 200 F.3d 1128, 1134 (8th Cir. 1999). "[J]udicial decisions analyzing prior restraints have applied different standards of review depending on the restraint at issue." *Catholic Leadership Coal. v. Reisman,* 764 F.3d 409, 438 (5th Cir. 2014) (citing *Milwaukee Police Ass'n v. Jones,* 192 F.3d 742, 749 (7th Cir. 1999)). In fact, *Milwaukee Police* suggests a prior restraint in a non-public school forum need only be "reasonably related to legitimate pedagogical goals." 192 F.3d at 749. S.B. 12 simply defines the contours of the curriculum for public and charter school students in Texas and easily satisfies the minimal standard set forth in *Milwaukee Police.*

### IX.    Plaintiffs' Motion for Preliminary Injunction Should be Denied.

In the event the Court dismisses Plaintiffs' First Amended Complaint for failure to state a claim, then the Court should dismiss Plaintiffs' Motion for Preliminary Injunction as moot; however, should the Court decide to address the merits of Plaintiffs' Amended Motion for Preliminary Injunction, any relief requested thereunder should also be denied as Plaintiffs cannot satisfy the requirements for "extraordinary" relief. *See Canal Auth. of Fla., v. Callaway,* 489 F.2d 567, 576 (5th Cir. 1974).

"Preliminary injunctive relief is 'an extraordinary remedy, not available unless the plaintiff carries his burden of persuasion as to all of the four prerequisites." *Id.* Plaintiffs must establish "(1) a 'substantial likelihood that they will prevail on the merits,' (2) a 'substantial threat that they will suffer irreparable injury if the injunction is not granted,' (3) 'that their substantial injury outweighs the threatened harm to the party whom they seek

to enjoin' and (4) that 'granting the preliminary injunction will not disserve the public interest." *City of El Cenizo v. Texas,* 890 F.3d 164, 176 (5th Cir. 2018) (quoting *Tex. Med. Providers Perf. Abortion Servs. v. Lakey,* 667 F.3d 570, 574 (5th Cir. 2012)). For many of the same reasons explained more fully herein, Plaintiffs are unable to carry their burden on any of the four prerequisites.

First, for the long litany of reasons discussed herein, Plaintiffs are not likely to prevail on the merits considering their inability to state a claim upon which relief can be granted. The Supreme Court has specifically made facial challenges "hard to win." *Moody v. Netchoice, LLC,* 603 U.S. 707, 723 (2024). And, in the unlikely event the Court reaches the merits of Plaintiffs' claims, Defendant has shown S.B. 12 to be independently constitutional under the long-standing governmental speech doctrine.

Second, any hypothetical injury that may be suffered by Plaintiffs cannot outweigh the threatened harm to the Defendant whom Plaintiffs seek to enjoin. In fact, the balancing of interests favors the State of Texas and Defendant herein. "When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws. *E.T. v. Paxton,* 19 F.4th 760, 770 (5th Cir. 2021). Pre-enforcement injunctions that enjoin the State's enforcement "threaten to short circuit the democratic process by preventing duly enacted laws from being implemented in constitutional ways." *Moody,* 603 U.S. at 723 (quoting *Wash. St. Grange,* 552 U.S. at 450-51). Considering the irreparable harm to the State, Plaintiffs cannot satisfy the third requirement.

"The decision to grant [preliminary injunctive relief] 'is to be treated as the exception rather than the rule.'" *Jones v. Bush,* 122 F.Supp.2d 713, 718 (N.D. Tex. 2000) (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 621 (5th Cir. 1985)). Plaintiffs' have failed to proffer any reason why the Court should treat this case as "the exception," and Plaintiff's Motion for Preliminary Injunction should be denied.

Finally, should the Court conclude that Plaintiffs are entitled to a preliminary injunction, the relief Plaintiffs seek is far too broad. Plaintiffs ask for "a preliminary injunction restraining Defendant from implementing the Act pending a final decision in this case." Plaintiffs do not include a proposed order that spells out exactly what this Court should enjoin. But their request for relief resembles the kind of overly broad injunction that the Supreme Court recently repudiated in *Trump v. CASA*, *Inc.,* No. 24A884, 2025 WL 1773631, at *8 (U.S. June 27, 2025). As the Supreme Court explained, this court's equitable authority is limited to "provid[ing] complete relief to each plaintiff with standing to sue." *Id.,* at *15. Any preliminary injunction prohibiting the application of S.B. 12 should not extend beyond the specific school districts named herein. Anything broader than this would improperly intrude on "a coordinate branch of the Government" causing irreparable harm. *Id.,* at *14.

## PRAYER

Defendants respectfully request the Court grant Defendants' Motion to Dismiss and deny Plaintiffs' Amended Motion for Preliminary Injunction. Defendants further pray for any additional relief, both at law and equity, to which Defendants may show themselves to be justly entitled.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

/s/ William H. Farrell
**WILLIAM H. FARRELL**
Assistant Attorney General
Texas Bar No. 00796531
biff.farrell@oag.texas.gov
(512) 979-5561 | FAX: (512) 320-0667

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: (512) 463-2120
Fax: (512) 320-0667

**COUNSEL FOR DEFENDANT,
MIKE MORATH, IN HIS OFFICIAL CAPACITY AS
COMMISSIONER OF THE TEXAS EDUCATION
AGENCY**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served via E-File Texas, File and Serve Texas on this October 16, 2025, on all counsel of record.

/s/ William H. Farrell
**WILLIAM H. FARRELL**
Assistant Attorney General

**CERTIFICATE OF CONFERENCE**

I hereby certify that I conferred with Plaintiffs' counsel, Mr. Brian Klosterboer, on October 14, 2025, regarding Defendant's Consolidated Motion to Dismiss and Response to Plaintiffs' Motion for Preliminary Injunction, and Mr. Klosterboer indicated Plaintiffs were opposed to the relief sought herein by Defendant.

/s/ William H. Farrell
**WILLIAM H. FARRELL**
Assistant Attorney General

**CERTIFICATE OF WORD COUNT**

Pending before the Court is Defendant's Unopposed Motion to Exceed Word Count. Dkt. 52. The undersigned counsel hereby certifies that the total number of words in Defendant's Consolidated Motion to Dismiss and Response to Plaintiffs' Request for Preliminary Injunction, exclusive of areas not considered within the word count, is 10,513 words as counted by Microsoft Word.

/s/ William H. Farrell
**WILLIAM H. FARRELL**
Assistant Attorney General